### HARRISON et al. v. RICHARDS.

(Circuit Court of Appeals, Eighth Circuit. May 14, 1912.)

#### No. 3,610.

CREDITORS' SUIT (§ 46*)—EVIDENCE—SUFFICIENCY.

Evidence considered in a creditors' suit to subject real estate in the name of a wife to a judgment against her husband, on the ground that it was purchased with the proceeds of other property fraudulently conveyed by the judgment debtor to his wife, and *held* insufficient to sustain such allegation of fraud.

[Ed. Note.—For other cases, see Creditors' Suit, Cent. Dig. §§ 182–184; Dec. Dig. § 46.*]

Sanborn, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

Suit in equity by William S. Richards against James Harrison and Hettie W. Harrison. Decree for complainant, and defendants appeal. Reversed.

W. H. Keating and James A. Devitt (Edward R. Mason, on the brief), for appellants.

Chester W. Whitmore and Wm. McNett (Walter McNett, on the brief), for appellee.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, J. This is a suit by William S. Richards to subject real property, the legal title to which is in Hettie W. Harrison, to the lien of a judgment against James Harrison, her husband. Complainant obtained a decree and the defendants appealed.

The important facts so far as they need be recited are as follows: September 3, 1885, James Harrison with others executed a note for $5,000 to Seth Richards, complainant's ancestor. There was a controversy whether Harrison was a principal debtor or a surety for his

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

comakers, but it is not important. Complainant sought to trace the proceeds of the note to Harrison, but we think without success. When the note was executed, a residence property in Osceola, Iowa, worth about $1,200, and then occupied by the Harrisons as a homestead, stood in the name of Mr. Harrison. There was also in his name by an unrecorded deed a half section of uncultivated land a few miles from town. Its value was $4,200, but it was subject to $3,000 of mortgages. The deed was recorded January 4, 1886. The note signed by Harrison became due September 3, 1886. On May 28, 1888, Harrison conveyed both properties to his wife for a recited consideration of $5,000, and the deed was recorded the following day. The residence property was not then occupied by them, but, in the view we take of the case, whether it was still their homestead need not be determined. In December, 1888, and March, 1889, Seth Richards, the payee of the note, took security of the makers other than Harrison. On March 10, 1890, the residence property was sold for $1,200, on April 25, 1890, the half section of land was mortgaged for $2,650, and on January 20, 1891, it was sold for $3,059.50 above the incumbrances. Seth Richards sued Harrison on the note on July 28, 1890, and obtained judgment against him April 29, 1891. Seth Richards died July 9, 1895, and on January 1, 1897, the judgment passed to complainant. The proceeds by mortgage and sales of the property above referred to were directly or indirectly and to a substantial degree invested with other funds which unquestionably belonged to Mrs. Harrison in other real property and the titles taken in her name. Complainant now seeks to subject the last acquired property to the payment of his judgment to the extent that the proceeds of that first owned were invested therein, upon the ground that the conveyance of May 28, 1888, from Harrison to his wife was fraudulent and without consideration. No attack was made upon the conveyance to Mrs. Harrison, nor effort to enforce the judgment until 1907. During the 19 years which elapsed after the conveyance and the 16 years following the date of the judgment the good faith of the transaction was not challenged. In the summer of 1897 Harrison called on complainant, and offered to settle the judgment for a small sum, and in response to a question of complainant he said he had no means. Aside from this, there was no investigation and no inquiry whatever about the transaction or the financial responsibility of Harrison. On June 24, 1905, Harrison filed his petition to be adjudged bankrupt, scheduling the judgment as his only liability, and was examined before the referee in bankruptcy in September of that year. It is claimed that the conveyance to Mrs. Harrison in 1888 was first disclosed as fraudulent by this examination, and that complainant then learned of it for the first time. This suit was brought October 11, 1907. The statutes of limitation of Iowa where the transactions occurred and the property involved is located provide that actions for relief on the ground of fraud in cases theretofore solely cognizable in courts of chancery must be commenced within five years from the discovery of the fraud; and the highest judicial tribunal of the state holds the familiar rule that whatever is sufficient to put a person upon

inquiry is equivalent to a discovery. The defenses in the present suit are a denial of the fraud charged, the statute of limitations, and laches. An exhaustive consideration of the voluminous record has convinced us that complainant must fail upon the merits. The proof is conclusive that Harrison never had any means of consequence aside from his salary as a minister of the gospel which ranged from $400 to $800 a year and the moneys he obtained from his wife. He once engaged in the stock business, but it was a losing venture. His salary and earnings were manifestly insufficient for the support of his family and the rearing and education of their three children. The original sources of all the real property they ever owned were substantial gifts to Mrs. Harrison from her father and her share of her mother's estate. The amounts and approximate dates of her receipt of them are we think clearly shown. Either the property Harrison conveyed to her in 1888 was already equitably hers or he was indebted to her for the avails of her father's wedding present some years before, in a sum largely in excess of its value above incumbrances. In the latter event he had a legal right to prefer her as a creditor. It is suggested that the property conveyed had been previously put in his name to give him a false standing or credit. But, when Richards' note was executed, the residence property was a homestead, and Harrison's deed for the half section of land was not of record. It is mere speculation that Harrison's supposed ownership induced an extension of credit that would not otherwise have been given. There is no evidence that he knew of Harrison's unrecorded deed, or, if he knew of it, that he objected to Harrison's subsequent conveyance to his wife, or attempted to investigate the recited consideration.

There is confusion and contradiction in the testimony of Mrs. Harrison, but no more than would naturally be expected under the circumstances. She is a woman of advanced years, and was first called as a witness in the bankruptcy proceedings and sharply examined by counsel as to transactions conducted for her by her husband many years before, with little time for reflection or refreshment of memory. Counsel for complainant dwell much upon the failure of defendants to make certain matters clear, but the charge of fraud is made by complainant, the burden is upon him, and he is responsible for the long delay in proceeding. We think the evidence taken in its entirety fails to show that fraud was committed or intended, or that Harrison has any interest in the property involved.

The decree is reversed and the cause is remanded for dismissal of the bill.

SANBORN, Circuit Judge, dissents.